## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CRAIG BRASCHUK,

    Plaintiff,

    v.

FIBROCELL SCIENCE, INC., DOUGLAS J.
SWIRSKY, JULIAN P. KIRK, JOHN
MASLOWSKI, MARC B. MAZUR, KELVIN
D. MOORE, MARCUS E. SMITH, and
CHRISTINE ST. CLARE,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO.:**

**COMPLAINT FOR
VIOLATION OF FEDERAL
SECURITIES LAWS**

Plaintiff Craig Braschuk ("Plaintiff"), by his undersigned attorneys, alleges the following

on information and belief, except as to the allegations specifically pertaining to Plaintiff, which

are based on personal knowledge.

### NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff, a stockholder of Fibrocell Science, Inc. ("Fibrocell" or the "Company")

brings this action against the members of Fibrocell Board of Directors (the "Board" or the

"Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange

Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange

Commission ("SEC") Rule 14a-9, and 17 C.F.R. § 240.14a-9, arising out of their attempt to sell

the Company to Castle Creek Pharmaceutical Holdings, Inc. ("Castle Creek").

2.      On September 12, 2019, the Company announced that it had entered into a

definitive agreement and plan of merger ("Merger Agreement"), by which Company will be

acquired by Castle Creek (the "Proposed Transaction").    Under the terms of the Merger

Agreement, Fibrocell stockholders will receive $3.00 in cash in exchange for each share of Fibrocell common stock (the "Merger Consideration").

3.      On October 11, 2019, the Company filed a Preliminary Proxy Statement on Form PREM14A (the "Proxy") with the United States Securities & Exchange Commission.  The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding the Company's financial projections, the financial analysis performed by the Company's financial advisor, Canaccord Genuity Group Inc. ("Canaccord"), and the process followed by the Board during negotiations of the Proposed Transaction.

4.      Without additional information the Proxy is materially misleading in violation of federal securities laws.

5.      By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

6.      The stockholder vote is forthcoming as the parties intend for the Proposed Transaction to close in the fourth quarter of 2019 (the "Stockholder Vote"). Under the Merger Agreement, following a successful Stockholder Vote, the Proposed Transaction will be consummated.

7.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from conducting the Stockholder Vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of Fibrocell common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District, as the Company's common stock is listed and traded on the New York Stock Exchange within this District; and (ii) Defendants have received substantial compensation in this District by accessing the capital markets active in this District.

**PARTIES AND RELEVANT NON-PARTIES**

11.     Plaintiff is, and has been at all relevant times, the owner of Fibrocell common stock.

12.     Defendant Fibrocell is a corporation organized and existing under the laws of the state of Delaware. It maintains principal executive offices at 405 Eagleview Blvd., Exton, Pennsylvania 19341. Fibrocell is a cell and gene therapy company that utilizes its proprietary autologous fibroblast technology to develop personalized biologics. Fibrocell common stock is listed for trading on the Nasdaq Capital Market under the ticker symbol "FCSC."

13.     Defendant Julian P. Kirk has served as a director of the Company since October 2012.

14.     Defendant John Maslowski has served as a director of the Company since December 2016 and serves as Fibrocell's President and Chief Executive Officer.

3

15.    Defendant Mark B. Mazur has served as a director of the Company since April 2010.

16.    Defendant Kelvin D. Moore has served as a director of the Company since 2009.

17.    Defendant Marcus E. Smith has served as a director of the Company since October 2012.

18.    Defendant Christine St. Clare has served as a director of the Company since February 2013.

19.    Defendant Douglas J. Swirsky has served as a director of the Company since March 2013 and is the Company's Chairman of the Board.

20.    Defendants referenced in ¶¶ 13 through 19 are collectively referred to as Individual Defendants and/or the Board.

21.    Relevant non-party Castle Creek is a privately held holding company that investes in companies in the "orphan dermatology space." Its principal executive offices are located at 233 Mr. Airy Road, 1st Floor, Basking Ridge, New Jersey 07920.

## FURTHER SUBSTANTIVE ALLEGATIONS

22.    On September 12, 2019, Fibrocell issued a press release announcing the Proposed Transaction. The Press Release read in relevant part:

> EXTON, Pa., Sept. 12, 2019 (GLOBE NEWSWIRE) -- Fibrocell Science, Inc. (Nasdaq: FCSC), a cell and gene therapy company focused on transformational autologous cell-based therapies for skin and connective tissue diseases, today announced it has reached an agreement to be acquired by Castle Creek Pharmaceutical Holdings, Inc. ("Castle Creek Pharmaceutical Holdings"), the parent company of Castle Creek Pharmaceuticals, LLC "Castle Creek Pharmaceuticals").
>
> Castle Creek Pharmaceutical Holdings will acquire Fibrocell for a total consideration of approximately $63.3 million, including repayment of debt and other financial instruments, in cash. Fibrocell common stockholders will receive all-cash consideration of $3.00 per share. This offer represents a 63%

premium to Fibrocell's 30-day volume weighted average price as of September 11, 2019. The transaction was approved by the Boards of Directors of both companies and is expected to close in the fourth quarter of 2019.

"Following our licensing agreement to develop and commercialize FCX-007, our experience working together on rare dermatological conditions caused us to quickly realize that Castle Creek and Fibrocell could achieve even greater synergies by combining the companies into one," said Greg Wujek, CEO of Castle Creek Pharmaceuticals. "With Castle Creek's resources, Fibrocell's gene therapy platform can be advanced into additional areas of high, unmet need – with the potential to develop multiple promising new therapies."

"We are incredibly pleased to announce this transaction, which we believe is in the best interests of both shareholders and patients," said John Maslowski, President and Chief Executive Officer of Fibrocell. "We believe that combining with Castle Creek has a strong strategic rationale, as they have the expertise and resources necessary to continue the development of both FCX-007 and FCX-013, potentially bringing these and additional novel products to patients in need."

Fibrocell's portfolio includes FCX-007, an investigational, late-stage stage gene therapy product candidate for the treatment of recessive dystrophic epidermolysis bullosa (RDEB), a congenital and progressive orphan skin disease caused by the deficiency of the protein COL7. FCX-007 is a genetically-modified autologous fibroblast that encodes the gene for COL7. By genetically modifying autologous fibroblasts ex vivo to produce COL7, culturing them and then treating wounds locally via injection, FCX-007 offers the potential to address the underlying cause of the disease by providing high levels of COL7 directly to the affected areas while avoiding systemic distribution. A Phase 3 trial was initiated recently, and if successful, a Biologics License Application (BLA) filing is expected in 2021.

The portfolio also includes FCX-013, an investigational, gene therapy candidate for the treatment of moderate to severe localized scleroderma. FCX-013 is an autologous fibroblast genetically modified using lentivirus and encoded for matrix metalloproteinase 1 (MMP-1), a protein responsible for breaking down collagen. FCX-013 is currently enrolling for the Phase 1 portion of a Phase 1/2 clinical trial.

These product candidates will augment Castle Creek Pharmaceuticals' CCP-020, an investigational, late-stage topical ointment under development for the treatment of epidermolysis bullosa simplex.

Under the terms of the agreement and plan of merger, Castle Creek Pharmaceutical Holdings will purchase all outstanding shares of Fibrocell

common stock for $3.00 per share and provide repayment of outstanding debt, preferred shares and warrants as defined by their individual agreements.

The closing of the acquisition is subject to customary closing conditions, including Fibrocell stockholder approval. Upon completion of the transaction, Fibrocell will become a privately held subsidiary of Castle Creek Pharmaceutical Holdings.

Fibrocell's employees will continue as employees of the combined company on completion of the transaction. Until that time, Fibrocell will continue to operate as a separate and independent company.

Castle Creek Pharmaceutical Holdings legal counsel for the transaction is Latham & Watkins LLP. Canaccord Genuity is acting as Fibrocell's exclusive financial advisor, while Hogan Lovells US LLP is acting as its legal counsel.

### About FCX-007

FCX-007 is Fibrocell's investigational, late-stage gene therapy product candidate for the treatment of RDEB, a congenital and progressive orphan skin disease caused by the deficiency of the protein COL7. FCX-007 is a genetically-modified autologous fibroblast that encodes the gene for COL7. By genetically modifying autologous fibroblasts ex vivo to produce COL7, culturing them and then treating wounds locally via injection, FCX-007 offers the potential to address the underlying cause of the disease by providing high levels of COL7 directly to the affected areas while avoiding systemic distribution.

FCX-007 has been granted Orphan Drug designation, Rare Pediatric Disease designation, Fast Track designation and Regenerative Medicine Advanced Therapy (RMAT) designation by the FDA.

### About FCX-013

FCX-013 is Fibrocell's investigational stage gene therapy candidate for the treatment of moderate to severe localized scleroderma. FCX-013 is an autologous fibroblast genetically modified using lentivirus and encoded for matrix metalloproteinase 1 (MMP-1), a protein responsible for breaking down collagen. FCX-013 incorporates Intrexon Corporation's proprietary RheoSwitch Therapeutic System®, a biologic switch activated by veledimex—an orally administered compound—to control protein expression at the site of the localized scleroderma lesions. FCX‑013 is designed to be injected under the skin at the location of the fibrotic lesions where the genetically-modified fibroblast cells will produce MMP-1 to potentially break down excess collagen accumulation.

The FDA has granted Orphan Drug designation, Rare Pediatric Disease designation and Fast Track designation to FCX-013.

**The Proxy Misleads Fibrocell Stockholders by Omitting Material Information**

23.     On October 11, 2019, the Company filed the materially misleading and incomplete Proxy with the SEC.  Designed to convince Fibrocell stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the Company's financial projections, Canaccord's financial analyses, and the terms of confidentiality agreements that currently bar potential acquirers from submitting proposals superior to the Proposed Transaction.

> ***The Recommendation Statement Fails to Disclose Material Portions of the Financial Projections Relied Upon by the Board and Canaccord***

24.     The summary of the financial analyses conducted by the Company's financial advisor, Canaccord, states that the advisor "reviewed certain financial projections with respect to Fibrocell prepared by management of Fibrocell."

25.     Canaccord used the projections "provided by Fibrocell management to determine the unlevered free cash flows for FCX-007 and FCX-013 for calendar years 2019 through 2028" in performing a discounted cash flow analysis on the Company's projected unlevered free cash flows.

26.     Thus, the cash flow projections that formed the basis for the Discounted Cash Flow analysis were management's best estimates of the Company's future results, and did not originate from some other source.

27.     But the Proxy omits Fibrocell's projected unlevered free cash flows and each of the constituent line items used in the calculation of unlevered free cash flow including capital expenditures and changes in working capital.

28.     Instead, the Proxy discloses the projected values of several other metrics, including Net Income, but only through the year 2023.

29.     The disclosed projections do not provide a fair proxy by which one could assess the Company's future cash flows. First, the disclosed projections only include half of the years used by Canaccord in its analysis. Second, Net Income and the other financial metrics disclosed will depart significantly from unlevered free cash flow figures for the Company as the Company's capital expenditures and net working capital increase and decrease, in a manner that would be essentially impossible for non-insiders to evaluate with confidence.

30.     Thus the omission of this projected financial information serves to prevent Company stockholders from evaluating the fairness analysis conducted by Canaccord, or to perform their own valuation of the Company.

31.     The above-referenced omitted information relating to the Company's financial projections, and particularly the Company's projected unlevered free cash flows, would, if disclosed, significantly alter the total mix of information available to Fibrocell's stockholders regarding the future value of the Company.

### *Material Omissions Concerning Canaccord's Financial Analyses*

32.     The Proxy describes Canaccord's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Canaccord's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Fibrocell's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Canaccord's fairness opinion in determining how to cast their vote on the Proposed Transaction.

This omitted information, if disclosed, would significantly alter the total mix of information available to Fibrocell stockholders.

33.    With respect to Canaccord's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the actual and implied terminal values calculated, the inputs and assumptions underlying the calculation of the terminal perpetual growth range of 0% to 2.0%, the inputs and assumptions underlying the calculation of the discount rate range of 25.6% to 27.6%.

34.    With respect to Canaccord's *Selected Public Companies Analysis*, the Proxy omits the valuation multiples observed for each of the companies considered in the analysis.

35.    With respect to Canaccord's *Selected Precedent Transactions Analysis*, the Proxy omits the valuation multiples for each of the observed transactions.

36.    And with respect to the *Other Information* used and observed by Canaccord, the Proxy omits the high and low range of the premiums paid in similar biopharmaceutical transactions, instead offering only the mean and median. Thus the observation of an abnormally low premium would skew the mean and median to an extent unknowable by Fibrocell stockholders.

*Material Omissions Concerning the Possibility of Superior Proposals*

37.    The Proxy misleads Fibrocell stockholders with respect to the confidentiality agreements entered into with "nine potential strategic partners." Each of these confidentiality agreements contained standstill provisions that prohibit those potential strategic partners from making an unsolicited proposal to acquire the company. These standstill provisions were also so-called "don't-ask-don't-waive" ("DADW") provisions.

38.     A DADW provision prevents a party from approaching the Company's Board privately to request a waiver of the standstill provision in order to submit a superior proposal. Through the use of these DADW provisions, a Board may willfully blind itself to superior offers.

39.     While the existence of these provisions is disclosed, the Proxy omits the information that would currently be most important: whether the provisions are still in effect.

40.     Instead, the Proxy states that the confidentiality agreements were entered into between March 2018 and October 2018, and that the standstill provisions were in effect "for at least one year." Fibrocell stockholders have no way of knowing whether the standstill provisions are still preventing these potential strategic partners from submitting a superior proposal to the Proposed Transaction.

41.     This omission is particularly notable because the Merger Agreement prohibits Fibrocell from soliciting superior alternatives to the Proposed Transaction.  Thus the Board has willfully blinded itself to any superior offers from the other parties, if those parties entered into similar non-disclosure agreements.

42.     Such information is material to Fibrocell stockholders as a reasonable Fibrocell stockholder would find it material and important to their voting decision whether or not parties that had previously been interested in a potential acquisition of the Company are now foreclosed from submitting superior proposals.

43.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Fibrocell**

63.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.     The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Fibrocell is liable as the issuer of these statements.

65.     The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66.     The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

68.     The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70.     Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

71.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72.     The Individual Defendants acted as controlling persons of Fibrocell within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Fibrocell and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.


Dated:  October 25, 2019

Respectfully submitted,

By:  /s/ *William Fields*
William Fields
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice)*
Elizabeth K. Tripodi (to be admitted *pro hac vice)*
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: denright@zlk.com
        etripodi@zlk.com

New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: wfields@zlk.com

*Attorneys for Plaintiff*

*Attorneys for Plaintiff*


44.